Judge Marshall

delivered the opinion of the Court.
The conversation in which the words were spoken, for which this action was brought, was evidently a private one, between the defendant and his brother, in relation to a felony understood to have been committed by stealing the money of another brother. The only witness who proves that the words were spoken, had been requested by the plaintiff, to notice and find out what was said about him, and heard only parts of the conversation, and infers that the words imputing guilt were spoken of the plaintiff, merely because he had heard the plaintiff’s *129 name used in the conversation. On the other hand, the defendant’s brother, with whom the conversation took place, states that the defendant made no charge against the plaintiff, importing that he was guilty of the theft; but that the purport and object of-the conversation was to inform him, the witness, that the defendant had that day learned that thé plaintiff was endeavoring to fix on him, (the witness,) the charge of having stolen the money. The words of the defendant, as proved by the first witness, are that ‘ ‘he believed that he had stolen (or taken) the money.” It was perhaps natural that this witness, hearing only parts of the conversation, and remembering the-request that he should find out what should be said of the plaintiff, should understand those words, spoken in the same conversation in which the plaintiff was named, as refering to him, and as imputing guilt to him, either by the direct statement of the defendants’ own belief, or by his repetition of the similar statement of some other person. But if such an inference, by a listener for slanders against the plaintiff, drawn from detached portions of a private conversation, not intended to be heard by any one, and not in fact heard by any one else, could form the proper basis of a verdict, it is very clear that the testimony of the other witness, if true, removes all ground for the inference drawn by the first; not only by denying expressly, that any such charge was made by the defendant against the plaintiff, but by showing that the subject and nature of the conversation was such that the words proved by the first witness, might have been used without importing that the defendant, or any one else, believed the plaintiff to have been guilty of the theft. If the object and purport of the conversation were such as the second witness states them to have been, it is obvious that the defendant, in communicating the plaintiff’s attempt to fix the charge upon the second witness, might have told him that he (the plaintiff) had said “he believed he had stolen the money,” or that the plaintiff had said “I believe he stole the money,” &c. So that there is no contradiction between the testimony of the first and that of the second witness. And the testimony of the second witness, if true, shows conclusively, that the plaintiff has *130 no cause of action for the words proved by the first. This being the case upon the evidence, and there being no testimony impeaching the character of the second witness, or authorizing the jury to disbelieve his statement — we are of opinion that the verdict for the plaintiff, is contrary to the evidence, and that, on this ground, if there had been no other, a new trial should have been granted, on the defendant’s motion.
Malice is essential to constitute slander; and tho’ it is generally implied from the fact that words naturally importing slander, were uttered, there are some occasions which will justify or excuse expressions or conversations, as being free of malice, which would otherwise be slanderous and actionable:as where a communication is made in discharge of some legal or moral duty to society; or, where a felony has been committed, & an interchange of facts & opinions takes place, with the view of discovering the perpetrator; or, where a communication, injurious to a party, is made confidentially, & bona fide, by a person interested or to a person interested, not to defame, but because it concerns the party interested, &c. &c.: in such cases, the words are not actionable—unless it appears that the occasion was a mere pretext, and that the speaing was with a malicious intention—of which intention the jury are to judge. It is not necessary that the words should have been spoken in kindness or friendship to the person to whom they relate, to make the occasion a justification.
*130 But we are also of opinion, that the Court committed an error in expounding the law to the jury, for which the judgment should be reversed.
After directing the jury to find for the plaintiff, if they believed from the evidence, that the defendant, in the conversation above refered to, had said he believed, the plaintiff had stolen the money, the Court told the jury, in substance, that the party speaking words which impute a felony to a third person, is liable to an action for such words, though they may have been spoken in confidence to the person addressed, unless they were spoken out of friendship and kindness for the person to whom they relate.
Considering this instruction as a mere abstract proposition, it restricts the sphere within which the opinions of individuals may be confidentially and prudently interchanged within limits narrower than those which the adjudged cases have imposed, and too narrow to satisfy the exigencies of society. The law excuses no man for uttering, even in confidence, a charge against another, which he knows to be false. But there certainly are occasions, where a man is allowed, and some in which he may be required, to express his real, opinion of others, founded on facts which he .knows to. be true, or which he has good reason to believe ; and where he will not be held answerable in damages for the .prudent expression of his belief, though the character of a third person be thereby injuriously affected, if he has not been actuated by express malice.
If a flagitious crime has been committed by some unknown person, does the law interdict the injured individual and his friends and neighbors from all intercommunication of facts and opinions, with a view to the discovery *131 of the perpetrator, under the peril of subjecting to pecuniary damages, the utterer of a wrongful suspicion, however confidentially and cautiously it may have been communicated? This would be to sacrifice the greater object to the less, and could scarcely be contended for. And yet, it has never been supposed that, in order to excuse such confidential communications of facts and opinions, they should appear to have proceeded from considerations of friendship or kindness towards the person who is suspected to be the offender. It is sufficient if the occasion be such as to justify the communication, in good faith, of known facts and honest opinions founded on them, and that such an occasion is not made a pretext for the gratification of individual malice or ill will, by publishing slanderous imputations upon the character or conduct of another.
The doctrine on this subject is laid down in Starkie’s treatise on Evidence (4 Am. edition, 862,) to the following effect: that if it appears “that the publication was made on an occasion and under circumstances which afford a prima facie presumption, that, notwithstanding the tendency of the words to defame or disparage the plaintiff, they were not spoken with that view, but on the contrary in the discharge of some legal or moral duty to society, or even in the fair and honest prosecution of the rights of the party himself, or the protection of his interests, the plaintiff will fail, unless he can establish the malicious intention by extrinsic evidence, and show that the defendant used the occasion as a mere color and pretext for venting his malice.” That in some cases, where the publication occurs in the performance of a legal duty, the occasion is an absolute bar to an action; and that in other cases, where the publication occurs in the performance of a duty required by the ordinary exigencies of society, though the party was under no legal obligation to perform it, the occasion supplies a prima facie justification. “Again,” says the same author, p. 864, “where a communication imputing misconduct to the plaintiff is made confidentially by a person interested, or to a person interested, no action is maintainable, provided it was made bona fide with a view to the interests of those concerned ; and although in such case, the expressions used *132 are stronger than the exigency of the case warranted, it is a question for the jury, whether they were used with an intention to defame, or with good faith to communicate facts, in the knowledge of which the party had an interest.” And the case of speaking the words by way of admonition and advice, or in confidence and friendship, is put among many others in support of these principles. As in the case of Haver vs Dawson, B. N. P. 8, where an action was brought against a man for warning his friend respecting the circumstances of. the plaintiff, Pratt, Chief Justice, directed the jury that, if they were of opinion that the words were not spoken out of malice, but in confidence and friendship and by way of warning, they should find for the defendant. The case of a master giving the character of a servant, is also one in which malice will not be presumed, but must be expressly proved. 1 T. Rep. 110, 4 Burrow, 2425, &c. And many other instances might be stated, in which, if the words be spoken in the discharge of a duty required by the ordinary exigencies of society, the occasion supplies a prima facie justification, which can only be rebutted by showing actual malice.
Mere secrecy will not alone rebut the presumption of malice; but it may confirm or aid the presumption of bona fide intentions, and absence of malice, which other circumstances may induce.
*132 These cases, and the doctrines which they establish, rest upon the basis, that malice in publishing the words is an essential ingredient of the cause of action; and that, although the law will generally imply it from the mere utterance of slanderous words without excuse ; yet, if they are spoken in the exercise of a social duty, or under circumstances which prima facie show that they are spoken with a good instead ox a bad motive, the implication of malice does not arise, or is considered as being rebutted by proof of the occasion of the publication, and malice must be made out by extrinsic evidence. It is not necessary to this result, that the occasion and circumstances should absolutely disprove the existence of malice; it is only necessary that they show the probable absence of that disposition to commit a wrong which the law would otherwise imply from the naked fact of speaking defamatory words which are not actually true.
The mere secrecy with which a communication, importing a criminal or other slanderous charge, is made, *133 does not of itself suffice to remove the implication of malice, for it is in secret that malice may often work its ends with the most certain and deadly effect. But if there be any other ground on which the party may be excusable for communicating his knowledge and belief, the secrecy or discretion with which it is done, aids in rebutting the implication of malice, and in confirming the inference arising from other circumstances, that it was done from a good motive and for a justifiable purpose. And it seems to us that, if the opportunity which a master (according to the order of society in England) has of knowing the character of a servant, authorizes him to communicate his opinion in good faith, to an enquirer, without subjecting him to the implication of malice; and if the relation of friendship between two individuals, authorizes one to communicate to the other, and for his benefit, his opinion or belief of the condition of a third person, with similar immunity from the legal presumption of malice; the circumstances of the present case are sufficient to afford to the defendant, a like exemption from the legal presumption, for communicating to his brother, in private and confidential discourse, his suspicion or belief as to the individual who had perpetrated a secret felony, to the injury of another brother—if, as the instruction supposes, any such communication was in fact made. The near relationship existing between these parties, would seem to authorize, if it did not require, each to take that interest in the subject, and especially in the discovery of the felon, which would justify a free interchange of their mutual knowledge and even suspicions, provided it were done with discretion, and not with the view of gratifying individual malice by the propogation of slander. And as it further appears, that an indictment against the plaintiff for this felony, was pending before the Grand Jury at the time of the speaking of the words, and was laying over until the next day, for further evidence; that the defendant having just returned from the place where the Grand Jury was sitting, had, in answer to questions, given this information to a public company, and had, also, further informed them, that the general impression, as *134 far as he knew it, seemed to be that, if a certain named witness made the same statement on oath that he had made before, the plaintiff would be found guilty; and as the conversation in which the words complained of were spoken, took place a little afterwards, apart from the same company, and was evidently private between the brothers, though portions of it were overheard by the witness above refered to, we are satisfied that the occasion furnished a prima facie justification for communicating, in confidence, the defendant’s belief as to the guilt of the plaintiff, And that, if the words proved to have been spoken by him, did express his belief of the plaintiff’s guilt, as understood by the first witness, and were spoken in confidence, they gave no cause of action, unless the jury should have believed from other circumstances, besides the mere fact of speaking the words, that the defendant was actuated by express malice. But the instructions of the Court, so far from directing the enquiry of the jury to the existence of malice, as a fact upon which their finding should depend, assumed as a matter of law, that there was malice, unless the jury should find that the words were spoken, not only in confidence, but from motives of friendship and kindness towards the plaintiff—which was clearly erroneous.
Money had been stolen; a grand jury had an indict. for the felony, before them; a brother of the man who had lost the money, returning from the court, stated that fact, in answer to inquiries made of him, and said the general opinion was, that if such a one swore what he had stated, the accused would be convicted. This brother was afterwards sued for slandering the accused, by sayingthat ‘he believed he stole the money;’ and it appeared that the words laid in the dec’n, if spoken at all of the pltf were spoken in a private conversation with a brother of the def't. both being brothers of the man whose money was stolen, and were overheard by one employed by the pltf. to listen:—held, that the occasion, and the relationship between the parties afford a prima facie justification, sufficient to defeat the action—in the absence of any other proof of malice than what arises from the mere speaking of the words.
*134 Wherefore, the judgment is reversed, and the cause remanded for a new trial, without payment of costs.