MAYO v. SAMPLE.

1. **Slander:** PRIVILEGED COMMUNICATION. Words ordinarily slanderous may not be so when spoken by a party in the performance of a public or official duty, upon a just occasion, and without malice. Words thus spoken are not actionable, unless express malice be shown.

2. ———— EVIDENCE. Under a plea of privileged communication, in an action for slander, evidence is admissible tending to show that the defendant did not act wantonly or rashly, or that he had probable cause for speaking the words, and thus tending to rebut the inference of malice which might be inferred from the words spoken.

3. ———— EVIDENCE OF CHARACTER. When in an action of slander the good character of plaintiff was not questioned by the pleadings or impeached by the evidence, the court did not err in refusing to admit evidence sustaining such character.

4. ———— WORDS SPOKEN BY A PUBLIC OFFICER. Words spoken by a public officer in good faith, without malice, and in the discharge of his official duties, are not slanderous in the absence of evidence of malice in fact.

*Appeal from Lee District Court.*

MONDAY, APRIL 10.

SLANDER: PRIVILEGED COMMUNICATIONS: EVIDENCE. The plaintiff, in his petition, avers *that* the defendant spoke concerning him the following words, in substance: " *You* (the plaintiff) *purchased stolen goods, knowing them to be stolen.*"

The defendant made two defenses. First, in denial, or, under former phraseology, not guilty. The second plea or answer was special, and in substance set up that the defendant, at the time the words charged were spoken, was mayor of the city of Keokuk, and, as such, *ex officio*, the head of the police department of the city, and concludes by averring "that all that the defendant did or said on that occasion, he did and said as mayor, and in discharge of his duties as a public officer, and without malice or intention to injure the plaintiff." [1]

On these issues the cause was tried by a jury, who returned the following verdict: "We, the jury, find for the defendant, as laid in the second plea." No objection was taken to the form or sufficiency of the verdict.

It was established on the trial that the defendant was mayor, as alleged, and that there was in force at the time an ordinance of the city, section one whereof was as follows: "§ 1. The mayor shall be the chief executive officer of the city, and shall take care *that the criminal laws of the State and the ordinances of the city are duly respected*, observed and enforced within the city," &c., &c.

From the testimony, it appeared that the plaintiff had a business stand or store in Keokuk, and was in the habit of buying old iron and second-hand articles of a like character.

---

[1] "And for further defense he says that, at the time of the commission of the grievance alleged in the plaintiff's petition, defendant was mayor of the city of Keokuk, and was, by virtue of said office, the head of the police department of the city of Keokuk, and had received satisfactory information that plaintiff had in his possession divers and sundry articles of personal property which had been stolen from the owners thereof, and sold, by the parties stealing it, to plaintiff; that, in discharge of his duties as mayor as aforesaid, in company with the marshal of said city, he called on defendant and stated to him what he had been informed, and represented to him the impropriety of such conduct, and requested him to permit his premises to be examined for said stolen property; and defendant avers that many articles of stolen property were found in the possession of plaintiff, and taken by the marshal, with the consent of plaintiff, and delivered to the owners thereof. And defendant avers that all he did and said on that occasion, he did and said as mayor of the city of Keokuk, and in discharge of his duties as a public officer, and without malice or intention to injure plaintiff."—*Second defense.*

Complaints were made by citizens that a gang of boys were engaged in stealing such articles, and selling them to the plaintiff. On the day on which the words for which this action is brought were spoken, some boys were arrested by the police, who admitted that they had stolen certain articles and had sold them to the plaintiff. They informed the city authorities that the plaintiff knew, when he bought them, that they had stolen them. One of the policemen proposed to get a warrant to search the plaintiff's store; met defendant, and told him that he had started for a warrant; defendant proposed that they should go and see the plaintiff first, as they might not need the warrant. They went and saw the plaintiff, and it was at this interview that the alleged slanderous words were spoken.

The verdict (quoted above) did not expressly find, and, perhaps, leaves it uncertain, whether the jury intended to find that the defendant did, in point of fact, speak the words charged in the petition. Upon this point there was considerable contradiction in the testimony. Some parts of this are briefly referred to, the better to illustrate the questions discussed in the opinion.

The plaintiff, examined as a witness, testified that the defendant said: "You did know it was stolen." "I did not know it was stolen," answered plaintiff. Defendant rejoined, "Not a word from you. You did know it was stolen. You are no better than a thief," &c. This, according to plaintiff's testimony, was repeated by the defendant in an excited manner several times. According to the plaintiff's clerk's testimony, "the defendant, when he came into the store, said to the plaintiff, 'Why are you buying those articles from the boys, when you know they were stolen?'"

A different version of what passed is given by the defendant's witnesses. Thus, Huston denies that the defendant was under excitement, and states that the defendant

said to the plaintiff, "Mayo, you must know the boys were stealing these things." Mayo said he did not know that he was buying stolen goods. Sample said he was surprised at such an old man doing such things; was doing an injury to the boys, &c., &c.

Defendant, who was examined as a witness, denied that he called Mayo "a thief," denied that he said "not a word from you," denied that he used the words testified to by the plaintiff, or that he had "any but the kindest feelings toward him." Says he stated to Mayo, "This thing has gone far enough, boys say they have been selling you stolen property. You are an old man, I am very sorry to find you in this kind of business." Mayo was indignant, and denied that he knew the property was stolen. He refused to do anything. "I told him I must proceed against him. I saw the kettle and some railroad chairs and spikes. I identified some of our railroad iron. I said, 'how could you but have known this was stolen.' He said he did not know anything was stolen. Alluding to the kettle, among other articles, Mayo said he had bought it of a boy for twenty-five cents. I said, "Mayo, you must have known this kettle was stolen, or it would not have been sold for this price," &c. Plaintiff appeals.

The errors insisted on by him are stated in the opinion.

*H. Scott Howell* and *D. F. Miller* for the appellant.

*Rankin & McCrary* for the appellee.

DILLON, J. — I. Words ordinarily slanderous may not be so because spoken by the party in the performance of *public or official duty,* upon a *just occasion,* and *without malice.* (See authorities cited in concluding portion of opinion.) Words thus spoken come within the class of *privileged communications;* and are not actionable unless express malice be shown.

1. SLANDER: privileged communications.

The jury have found the defendant's second plea or answer to be true in point of fact. There is no satisfactory evidence of express malice, and its existence is rebutted by the finding of the jury. The defendant, by virtue of his office as the head of the police department, and charged with the duty of seeing that the criminal laws of the State and city were duly enforced, had the right, acting in good faith from honest motives, and with probable cause or ground of suspicion, to proceed to the plaintiff's place of business, and to state to him what others had told him in respect to stolen property being there, and that he wished to search for and obtain it. Let us not be understood as saying that he would be justified in making a wanton and malicious assault upon the plaintiff's character; or that he could make his own official character and visit a cloak to cover malice or words maliciously spoken.

The public have rights, and so have individuals. Rules of law are founded upon good sense and due regard alike to the rights of both the public and the citizen. It not unfrequently happens, however, that an individual becomes, without any real guilt, so surrounded by circumstances as that he must suffer some inconvenience, or even injury, in order that the higher interests of the public, or the community, may be protected by the detection and punishment of offenders. (See, on this point, observations of EWING, Ch. J., in *Grimes* v. *Coyle*, 6 B. Monr., 301–305; Opinion, MARSHALL, Ch. J., in *Faris* v. *Starke*, 9 Dana, 128, 130.)

We now notice, in the light of these principles, so far as requisite, the specific errors urged by the appellant.

II. A bill of exceptions recites, that, in detailing the circumstances which induced him to go to the store of the plaintiff on the occasion when the alleged slander-ous words were spoken, the defendant testified "that he was mayor, and the head of the police; that he received information that certain boys in the city had been

2. ——
evidence.

engaged in stealing articles from stores, offices, &c.; that he had got one of the boys, gained his confidence, got him to disclose his comrades, and what they did with the stolen property. This boy told me (defendant) that they had stolen scrap-iron and sold it to the plaintiff in this suit, and that the plaintiff knew it to be stolen when he bought it of them. One or two of the boys told me that they had sold their stolen iron to the plaintiff, and that the plaintiff knew when he bought it that it had been stolen." To this testimony the plaintiff objected; but the objection was overruled, and the plaintiff excepted, and now assigns this ruling as error.

Nothing can be clearer than that this evidence was proper. It tended to show that the defendant did not act wantonly or rashly; that he had probable cause for what he did and said to the plaintiff; and it thus tended to rebut the presumption or inference of malice which might, under other circumstances, be inferred from the defendant's conduct and language. (See *Kinyon* v. *Palmer, post, second division of opinion*.) It is proper to add, that the bill of exceptions shows that the testimony was neither offered nor admitted to prove a *justification*.

III. As the defendant had not attacked or questioned the good character of the plaintiff by the pleadings, or offered 3. —— evidence for that purpose, it was not error in the court to refuse to allow the plaintiff to prove his character for truth, honor and honesty.

<small>evidence of character.</small>

IV. The court instructed the jury, "that the answer of the defendant contained two good counts, either of which, if true, is a complete defense." In this, there was no error. *Bona fide* efforts, made by public officers, in the line of their duty, acting upon information received from others, and without malice, with a view to discover offenders or obtain stolen property, are justifiable and proper. And a charge of crime, in connec-

<small>4. —— words spoken by an officer.</small>

tion with such efforts, where no bad motive exists, and where "the party acted in good faith, and took no advantage of the occasion to injure the plaintiff's character or standing," by a malicious attack, is not regarded as slanderous, without proof of malice in fact. (See, on this subject, fully supporting the above views, *Washburn* v. *Cooke*, 3 Denio [N. Y.], 110; *Grimes* v. *Coyle*, 6 B. Monr., 301; *Faris* v. *Starke*, 9 Dana, 128; 1 Hilld. on Torts, 343, 373, and authorities cited; *Rector* v. *Smith*, 11 Iowa, 302; *Bradley* v. *Heath*, 12 Pick., 163; *Bunton* v. *Worley*, 4 Bibb [Ky.], 38; *Coffin* v. *Coffin*, 4 Mass., 1; *Streeby* v. *Wood*, 15 Barb., 105; *Coombs* v. *Rose*, 8 Blackf., 155; *White* v. *Nicholls*, 3 How. [U. S.], 266; 1 Am. Lead. Cas., 166, and authorities cited.)

The verdict of the jury establishes that the defendant did not speak the words charged, if at all, out of ill will, resentment or express malice.

This court is of the opinion that the court below did not err, in refusing to grant a new trial because of errors of law occurring at the trial, or because the verdict was contrary to the evidence.

                                                    Affirmed.